> Verdict, guilty with a recommendation to the mercy of the Court.

————◇————

ANGELO DI PRISCO, administrator of ALFONZO DI PRISCO, *vs.* THE WILMINGTON CITY RAILWAY COMPANY, a corporation of the State of Delaware.

*Street Railways—Street Crossings and Highways—Injuries to Children—Care required in Use of Highways—Negligence— Contributory negligence—Proximate cause— Evidence—Res gestae.*

1. Statements of an individual made at a period of time so closely connected with the transaction that there has been no opportunity for subsequent reflection or determination as to what it might or might not be wise for him to say—Statements made at a time when forced out as the utterance of truth—may be received in evidence.

2. In an action for the death of a boy eight years of age, evidence as to his cheerfulness is irrelevant.

3. In an action for the death of a child by an electric street railway company evidence is admissible to show that children gathered at the place of the accident, and prior thereto, for the purpose of showing that it was a thronged place.

4. The public, as well as a street railway company, are entitled to the use of a highway ; but since the company of necessity is limited to those parts of the street covered by its tracks, its right to use the street within those lines is superior to the rights of other users.

5. In using a street or highway, all persons are bound to the exercise of reasonable care to prevent collisions and accidents.

6. A street railway company is held to greater caution at street crossings and in the more thronged streets of the densely populated portions of the city, than in the less obstructed streets in the open or suburban parts.

7. If the vision of a person approaching a street railway crossing is obstructed he is bound to look for approaching cars in time to avoid collision with them, and, if he does not look, and for this reason does not see an approaching car until it is too late to avoid a collision, he is guilty of negligence, and precluded from a recovery for injuries sustained.

8. Negligence defined.

9. The term "ordinary care and diligence" when applied to the management of electric railway cars in motion, must be understood to import all the care, circumspection, prudence, and discretion which the particular circumstances of the place or occasion require of the servants of the defendant company; and this will be increased or diminished as the ordinary liability to danger and accident and to do injury to others is increased or diminished in the movement and operation of such cars.

10. If the negligence of a street railway company and the person injured in a collision was mutual, and the negligence of each was operative at the time of the accident, no action can be maintained for such injuries.

11. If the negligence of a street car company resulting in a collision was the proximate cause of the accident and death of plaintiff's intestate, plaintiff is entitled to recover, though the deceased might have been guilty of some negligence, since, if the injury was proximately caused by defendant's failure, after becoming aware of the danger of plaintiff's intestate, to use ordinary care to avoid injuring him, plaintiff's contributory negligence is no defense.

12. A child eight years of age, killed in a collision with a street car, was required to exercise such care only as children of his age and intelligence would ordinarily be expected to use under similar circumstances.

13. Where plaintiff's intestate, a child eight years old, was playing in a street, when he suddenly ran alongside and against a street car, and was struck, knocked down, and run over before the motorman could stop the car, though he exercised every endeavor to do so, the street car company was not liable for his death.

14. Failure of a street railway company to provide its car with a conductor is not alone sufficient to constitute negligence justifying a recovery for the death of a child in a collision with a car, unless the motorman at the time of the accident was prevented from doing his duty by trying to perform the duties of both motorman and conductor, and that by reason thereof his failure to perform his duty as a motorman entered into and caused the injury.

*(February 15, 1904.)*

LORE, C. J., and PENNEWILL and BOYCE, J. J., sitting.

*Horace Greeley Knowles* for plaintiff.

*Walter H. Hayes* and *George N. Davis* for defendant.

Superior Court, New Castle County, February Term, 1904.

ACTION ON THE CASE (No. 186, September Term, 1903), to recover damages for the death of Alfonzo Di Prisco (a minor eight years of age) by being negligently struck and run over by a car of the defendant company, as alleged in the declaration, on West Eighth Street near Lincoln, in the city of Wilmington, on the fourteenth of September, 1903.

At the trial a witness, Lizzie E. Tazewell, was asked by the plaintiff's counsel, among others, the following questions :

Q. Where was the body of the little boy, Alfonzo Di Prisco, when you went around to see it ? A. Under the car.

Q. Did you assist in taking the body from under the car ? A. Yes, sir.

Q. At the time you were helping to take his body out, did the little fellow make any remark ? A. Yes, sir.

Q. What remark did he make to you and the other persons there as you were lifting him from under the car and immediately after the car had passed over him ?

(Objected to by counsel for the defendant as irrelevant and inadmissible under the decisions of the Superior Court, being after the accident had happened and not a part of the *res gestae*. Mr. Knowles contended that the question was admissible as a part of the *res gestae* it being an involuntary exclamation and was a spontaneous utterance of humanity.

It was not contended that the exclamation was made in the presence of any of the defendant company's officers.)

BOYCE, J. :—This question was raised once before in this trial

and we thought then that it was not admissible and so ruled at that time. The question is presented to us now in a different phase from what it was then.

We find in *1 Greenleaf on Evidence, (16th Ed.), Section 162-g,* that "The willingness to receive these statements, as an exception to the hearsay rule, rests on the notion that the circumstances of the occasion so excite and control the mind of the speaker that his statements are natural and spontaneous, and therefore sincere and trustworthy ; thus, LACOMBE, J., says, charging a jury, in *U. S. vs. King :* 'The declarations of an individual, made at the moment of a particular occurrence, when the circumstances are such that we may assume that his mind is controlled by the event, may be received in evidence, because they are supposed to be expressions involuntarily forced out of him by the particular event, and thus have an element of truthfulness they might otherwise not have. But the principle applies only to a statement made at a time when it was forced out as the utterance of a truth, forced out against his will or without his will, and at a period of time so closely connected with the transaction that there has been no opportunity for subsequent reflection or determination as to what it might or might not be wise for him to say.' They must be 'spontaneous', 'impulsive', 'instinctive', 'generated by an excited feeling which extends without break or let-down from the moment of the event they illustrate.' "

It seems to us after having listened to the arguments of counsel, and after a careful consideration of the question now before the court, that it is admissible.

(The defendant excepted.)

A.  He said, "Oh, Mamma !   I saved this leg and I tried to save this other one but I could not.   Mamma, will I have to die ? "

The witness was then asked the following questions :
Q.   Was he (Alfonzo Di Prisco) a cheerful boy ?
(Objected to by counsel for defendant as irrelevant).

BOYCE, J. :—How could his cheerfulness have any relevancy in this case? His intelligence might, or his industrious habits, if he had any, but not his cheerfulness.

Q. You are familiar with the locality there—Eighth and Lincoln Streets? A. Yes, sir.

Q. Up to, and prior to this accident, were there a great many small boys that gathered there in that vicinity?

(Objected to by counsel for defendant as immaterial).

*Mr. Knowles :*—This is to show that this was a place where children gathered and that, therefore, a greater degree of vigilance was imposed by law upon the company at that place than otherwise would have been.

BOYCE, J. :—If the object is to show that this was a thronged place, it is admissible. You may ask the question.

(The defendant excepted.)

BOYCE, J., charging the jury:

Gentlemen of the jury :—Angelo Di Prisco, administrator of Alfonzo Di Prisco, deceased, seeks, by this action, to recover from the Wilmington City Railway Company, the defendant, damages for the death of the said deceased, which the plaintiff alleges was caused on the fourteenth day of September last past, by the negligent and careless operating of one of the electric cars of the defendant company, on West Eighth Street, at or near Lincoln Street, in this city, on said date, in that, at the time of the accident, the said car was negligently and carelessly run along its tracks on said West Eighth Street, near the place aforesaid, (1) without proper warning as to its approach by bell or other warning; (2) without a sufficient crew; (3) without a safe and proper fender; (4) and without vigilance and care in keeping a proper lookout ahead for persons upon or near to its tracks.

The defendant company, however, denies that it was guilty of any negligence or wrong-doing in the management of the said car by which the injury complained of was inflicted, resulting in the death of the plaintiff's intestate; but on the contrary, the company claims that it exercised all reasonable and proper care in and about the premises, at the time of the accident, to avoid the same; and that the death of Alfonzo Di Prisco was caused by his own negligence and not that of the defendant company.

It is admitted that the defendant was operating the road and car at the time and place of the accident.

The defendant had a right to use the public highway, at the time and place of the accident, in common with other travelers and persons who saw fit to use it. The public as well as the defendant company, were entitled to use said highway. The electric cars of necessity could use only those parts of it covered by their tracks, inasmuch as such cars move only upon their tracks within fixed limits. Within those lines the right of the company is superior to that of other users, and must not be unnecessarily interfered with or obstructed. In using the highway all persons are bound to the exercise of reasonable care to prevent collisions and accidents. Such care must be in proportion to the danger of the peculiar risks in each case. It is the duty of the company to provide competent and careful motormen and servants; to see that they use reasonable care in operating the cars; that the cars move at a reasonable rate of speed; that they slow up, or stop if need be, where danger is imminent and could, by the exercise of reasonable care, be seen or known in time to prevent accident; and that proper warning be given of the approach of the car at a crossing on the public highway. There is a like duty of exercising reasonable care on the part of the traveler. The company and the traveler are both required to use such reasonable care as the circumstances of the case demand; an increase of care on the part of both being required where there is an increase of danger. The right of each must be exercised in a reasonable and careful manner, so as not unreasonably

to abridge or interfere with the right of the other. We are not prepared to lay down any absolute rule as to what precise acts of precaution are necessary to be done or left undone by persons who may have need to cross the tracks of electric railways. Nor will we attempt to specify the acts of precaution which are necessary to be done, or omitted, by one in the management of an electric car. Such acts necessarily must depend upon the circumstances of each particular case. The degree of care differs in different cases. A railway company is held to greater caution at street crossings and in the more thronged streets of the densely populated portions of the city than in the less obstructed streets in the open or suburban parts. It is difficult, if not dangerous, to lay down any inflexible rules in this regard. The general rule is, that the person in the management of the car, and the person approaching a car or crossing a railway track, are bound to the reasonable use of their senses of sight and hearing for the prevention of accident; and also to the exercise of all such reasonable caution as ordinarily careful and prudent persons would exercise in like circumstances. A person approaching a railway crossing with which he is familiar is bound to avail himself of his knowledge of the locality and act accordingly. If, as he approaches the crossing, his line of vision is obstructed, he is bound to look for approaching cars in time to avoid collision with them; and if he does not look, and for this reason does not see an approaching car until it is too late to avoid a collision, he is guilty of negligence and could not recover therefor.

*Adams vs. W. & N. C. E. Ry., 3 Pennewill, 512; Snyder vs. Peoples Ry., 4 Pennewill, 145.*

In cases like this, the gist of the action is negligence. And if the accident sued for is not the result of the negligence of the defendant, the plaintiff cannot recover. Negligence is never presumed. It must be proved. And the burden of proving the negligence from which the injuries or death results is upon the plaintiff. Having charged the defendant with negligence, the

plaintiff must establish it to the satisfaction of the jury by a preponderance of the evidence.

Whether negligence exists in a particular case, is a question of fact to be found by the jury, if they may, under the evidence. What constitutes negligence is a question of law for the Court. It has been variously defined in the courts of this State, but after all, the different definitions mean substantially one and the same thing. It has been termed the want of ordinary care, that is, the want of such care as a reasonably prudent and careful man would exercise under similar circumstances. It has been termed the failure to observe, for the protection of the interests of another, that degree of care, precaution and vigilance which the circumstances justly demand, whereby such other person suffers injury. While the obligation to exercise care in the conduct of one's business varies under different circumstances, there always remains the duty to exercise such reasonable care as should be exercised by a person of ordinary prudence under like circumstances. Applying these general principles of the law as to what constitutes negligence to the facts in this case, drawn from the evidence produced before you, you are to determine whether the defendant did exercise due care, such as a reasonably prudent man would have exercised under similar circumstances. You will observe that what is due and proper care must depend on the particular facts and circumstances of each case. The term, ordinary care and diligence, when applied to the management of electric cars in motion must be understood to import all the care, circumspection, prudence and discretion which the particular circumstances of the place or occasion require of the servants of the defendant company, and this will be increased or diminished as the ordinary liability to danger and accident, and to do injury to others, is increased or diminished in the movement and operation of such cars.

*Tully's Admr. vs. P., W. & B. R. R., 3 Pennewill, 455,* and cases cited.

You are to determine from the evidence, applying it to the

law as announced by the Court, whether the death of Alfonzo Di Prisco was caused by the negligence of the defendant company, and if so, whether that negligence was the proximate cause of the accident. If the negligence of the deceased was the proximate cause of his death he contributed thereto and his administrator cannot recover. And where there has been mutual negligence, and the negligence of each party was operative at the time of the accident, no action whatever can be sustained. But if the negligence of the defendant was the proximate cause of the accident and death, in that case, although the deceased might have been guilty of some negligence, it would not be contributory negligence, for it is well settled that the plaintiff may recover damages for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if such injury was proximately caused by the defendant's failure, after becoming aware of the danger of the plaintiff's intestate, to use ordinary care for the purpose of avoiding injury to him.

*Tully's Admr. vs. P., W. & B. R. R., supra.*

Like as the plaintiff, in actions of this character, must sustain his allegation of negligence by satisfactory proof before he can recover, the defendant, when he relies upon contributory negligence on the part of the plaintiff to escape liability, must satisfy the jury by a preponderance of evidence that contributory negligence on the part of the plaintiff was the proximate cause of the injury complained of.

It is proper that we should say to you that the conduct of children in the matter of contributory negligence is not governed by the same rule that governs adults. For while it is the duty of the infant to exercise ordinary care to avoid injury, ordinary care for him is that degree of care which children of the same age, of ordinary care and prudence, are accustomed to exercise under like circumstances. But this is not an inflexible rule, and is to be modified according to the maturity and capacity of the infant, his ability to understand and appreciate the danger, and his familiarity with

all the surroundings and conditions in each particular case ; and it is for the jury to say whether under all the circumstances the infant exercised reasonable care.

*Weldon vs. P., W. & B. R. R. Co., 2 Pennewill, 11.*

With this qualification of the rule as to contributory negligence in favor of an infant, the latter may, as well as an adult, be guilty of such negligence.

If the motorman and servants of an electric railway company discover an infant upon its tracks, they should exercise such reasonable care for his protection from injury as would be reasonable under all the circumstances, including the maturity and capacity of the infant and his familiarity with his surroundings and conditions. (*Tully's Admr. vs. P., W. & B. R. R., supra*). If you find under the evidence that the motorman did see, or, by the exercise of due care and looking out and ahead, could have seen the boy in time to have stopped the car and thus have prevented the accident, then the defendant would be liable. But if you find that the boy suddenly jumped alongside of and against, or in front of the car, and was struck and knocked down and run over by the car without any negligent act or omission on the part of the motorman, and that the latter applied the brakes of his car and did all he could to prevent the injury complained of, the plaintiff cannot recover.

As we have already said to you, it is the duty of the company in operating its cars to provide competent and careful motormen and servants, sufficient in number to avoid accident ; and if an accident should occur from a failure of duty in this respect, it would constitute negligence. But we say to you that if you find that the car in question did not have a conductor on it, at the time and place of the accident, that fact alone will not constitute negligence on the part of the company, unless you should be satisfied that the motorman was at the time of the accident prevented from doing his duty as such in trying to perform the duties of both motorman and conductor, and that by reason thereof his failure to

perform his duty as motorman entered into and caused the injuries complained of.

If you are satisffed by a preponderance and weight of the evidence, taking into consideration all the facts and circumstances of the case, that the death of Alfonzo Di Prisco was caused by the negligence and carelessness of the defendant company, without fault on his part (therein considering his age, intelligence, familiarity with the place and all the surroundings), then your verdict should be for the plaintiff, and the measure of damages would be such a sum as you believe from the evidence the deceased would probably have earned in his business during life and left as his estate at the time of his death, and which would have gone to his next of kin, taking into consideration the age of the deceased, his ability, disposition to labor and habits of living and expenditure.

If, however, you should believe that the contributory negligence of Alfonzo Di Prisco was the cause of his death (bearing in mind what we have said to you relative to contributory negligence on the part of an infant), or if you should not be satisfied that the negligence of the defendant company was the proximate cause of his death, your verdict should be for the defendant.—(*Tully's Admr. vs. P., W. & B. R. R., supra*).

Verdict for plaintiff for $1000.